FILED
2026 Sep-11 AM 11:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MORLON JYMELL THOMPSON, )
)
Plaintiff, )
)
v. ) Case No. 2:26-cv-1208-GMB
)
STATE FARM FIRE AND )
CASUALTY COMPANY, )
)
Defendant. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Morlon Jymell Thompson filed a complaint in the Circuit Court of Calhoun County, Alabama against State Farm Fire and Casualty Company. Doc. 1-2. State Farm timely removed the case to the Northern District of Alabama based on diversity jurisdiction. Doc. 1. Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a United States Magistrate Judge. Doc. 13. Before the court is Thompson's Motion to Remand (Doc. 8), which is due to be denied.

## I. STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Accordingly, this court is "empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution or otherwise authorized by Congress." *Taylor v. Appleton*, 30 F.3d

1365, 1367 (11th Cir. 1994) (citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). When the parties disagree on the court's jurisdiction, doubts are to be resolved in favor of returning the matter to state court on a properly submitted motion to remand. *Burns*, 31 F.3d at 1095.

## II. STATEMENT OF FACTS

According to the complaint, Thompson was driving his car in Fultondale, Alabama, when another driver "made an improper lane change and crashed into [his] vehicle." Doc. 1-2 at 3. Thompson tore his rotator cuff in the collision and incurred over $20,000 in medical bills. Doc. 1-2 at 3. He also "suffered physical injuries, mental anguish, pain and suffering, and property damage." Doc. 1-2 at 3.

At the time of the collision, Thompson had an underinsured motorist insurance policy with State Farm. Doc. 1-2 at 3. The at-fault driver's insurance carrier paid Thompson the policy limits of $25,000 but his "total damages exceed" that amount, so he made a claim for underinsured motorist benefits under the policy. Doc. 1-2 at 3. State Farm initially "delayed responding to the claim for many days, claiming that documents were missing," when they were not. Doc. 1-2 at 3.

State Farm offered Thompson $5,000 to settle the underinsured motorist claim. Doc. 1-2 at 3. Thompson refused to settle, and State Farm later offered

$25,000. Doc. 1-2 at 4. Thompson again refused. Doc. 1-2 at 4.

Based on these facts, Thompson brings claims for breach of contract and bad faith against State Farm. Doc. 1-2 at 4–7. He seeks (1) compensatory damages for unpaid underinsured motorist benefits, pain and suffering, mental anguish, and property damages; (2) punitive damages; (3) pre-and post-judgment interest; and (4) attorney's fees and costs. Doc. 1-2 at 8. The complaint's *ad damnum* clauses do not specify the amount of damages Thompson seeks. Doc. 1-2 at 8. But the complaint alleges that his medical bills exceed $20,000 (Doc. 1-2 at 3–7) and that State Farm's settlement "offer of $25,000 was unreasonably low given Plaintiff's documented damages, which exceed $20,000 in medical bills alone, plus pain and suffering, mental anguish, and property damage." Doc. 1-2 at 4.

Before filing the complaint, Thompson's lawyer sent a demand letter to State Farm. Doc. 1-3. The letter demanded "his policy limits of $75,000." Doc. 1-3 at 3. After filing suit, Thompson's lawyer sent an email to the attorney for State Farm. Doc. 8-1. The email states that "with clear liability, 2 tears, many offer delays, an initial offer of 0 and then 5K and a sympathetic long time paying client and retired first responder, 75k policy limits is the only path." Doc. 8-1. The email also states that "if [State Farm] drags their feet, I will become v[ery] interested in pursuing the [bad] faith claim." Doc. 8-1.

## III. DISCUSSION

A defendant may remove a civil action "originally filed in a state court to the federal district court when the district court has original jurisdiction to consider the case." *Lost Mtn. Homeowners Assoc., Inc. v. Rice*, 248 F. App'x 114, 115 (11th Cir. 2007). "Original jurisdiction requires diversity of the parties or the existence of a federal question." *Id.* State Farm invokes only this court's diversity jurisdiction in its notice of removal (Doc. 1 at 2–7), and no federal question appears on the face of the complaint.

Diversity jurisdiction exists when (1) the action is between citizens of different states and (2) the amount in controversary exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). It is undisputed that there is complete diversity of citizenship. Thompson, however, disputes that the amount in controversy exceeds $75,000. Doc. 8.

Even when the complaint does not plead a specific amount of damages, removal is proper if it is facially apparent from the complaint that the amount in controversy exceeds $75,000. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). In this analysis, the court "may make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent" that the amount in controversy has been met. *Jones v. Novartis Pharms. Co.*, 952 F. Supp. 2d 1277, 1282 (N.D. Ala. 2013) (quoting *Roe*

*v. Michelin N. Am., Inc.*, 613 F. 3d 1058, 1061–62 (11th Cir. 2010)). If it is not facially apparent from the complaint that the amount in controversy exceeds $75,000, then the court should look to the notice of removal and any other evidence relevant to the amount in controversy at the time of removal. *Id.* at 1283. When a non-removing party seeks remand, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Op. Co. v. Owens*, 574 U.S. 81, 88 (2014) (citing 28 U.S.C. § 1446(c)(2)(B)).

A "removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010).[1] Indeed, "[t]he law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life." *Id.* The court need not "'suspend reality or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount.'" *Id.* at 770 (quoting *Roe v. Michelin N. Am., Inc.*, 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009)). Importantly, the court's "analysis

[1] Thompson argues for a "legal certainty" standard. *See* Doc. 8 at 3. That standard does not apply where, as here, the complaint is silent on the amount in controversy. *See Cowan v. Combined Ins. Co. of Am.*, 67 F. Supp. 2d 1312, 1315–6 (M.D. Ala. 1999) (explaining that the legal certainty test applies when the state-court complaint "specifically claims less than the requisite jurisdictional amount in controversy" but "where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the [$75,000] jurisdictional requirement").

of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Id*. at 751.

Here, it is not facially apparent from the face of the complaint that the amount in controversy exceeds $75,000 since the complaint does not specify the total amount of damages Thompson seeks. While the complaint appears to value the breach of contract claim in excess of $20,000 (Doc. 1-2 at 3–7), it does not assign a value to Thompson's pain and suffering, mental anguish, and property damage. Nor does it assign a value to the claim for bad faith. For this reason, the court must consider the notice of removal and any other evidence in the record relevant to the amount in controversy. *See Jones*, 952 F. Supp. 2d at 1283.

The notice of removal relies on the following to establish the amount in controversy: (1) Thompson's request for both compensatory and punitive damages; (2) his pre-suit demand letter for $75,000 in underinsured motorist benefits; and (3) his claim for bad faith, for which Alabama law authorizes the recovery of punitive damages. Doc. 1 at 3. The court agrees that this evidence meets the jurisdictional threshold.

Thompson's request for compensatory damages for his medical bills, which are in excess of $20,000, as well as pain and suffering, mental anguish,[2] and property

[2] For breach of insurance contract claims, the Alabama Supreme Court has held that the "'the law in this state does not permit recovery for . . . mental anguish and suffering.'" *Brown v. St. Farm*

damage for his breach of contract claim places more than $75,000 in controversy when combined with his request for punitive damages on the bad faith claim. Despite Thompson's argument to the contrary, the Eleventh Circuit requires this court to consider the availability of punitive damages in assessing the amount in controversy. *Rae v. Perry*, 392 F. App'x 753, 755 (11th Cir. 2010) ("Punitive damages must be considered when determining the jurisdictional amount in controversy in diversity cases."). And Alabama law permits an award of punitive damages capped at three times the compensatory damages awarded or $500,000, whichever is greater. *See* Ala. Code § 6-11-21(a). Common sense and judicial experience lead to the conclusion that the aggregate amount in controversy exceeds $75,000, exclusive of interest and costs, when considering the underinsured motorist claim, the bad faith claim, and an amount sufficient to punish State Farm for its alleged behavior. *See Surles v. Scott*, 2018 WL 3827398, at *3 (S.D. Ala. July 24, 2018) (holding amount-in-controversy requirement was satisfied where plaintiffs sought to recover medical expenses totaling $23,971.39, compensatory damages for lost wages and pain and suffering, and punitive damages arising out of motor vehicle accident), *adopted*, 2018 WL 3826777 (S.D. Ala. Aug. 10, 2018).

---

*Fire & Cas. Co.*, 358 F. Supp. 3d 1265, 1281 (N.D. Ala. 2018) (quoting *Vincent v. Blue Cross-Blue Shield, Inc.*, 373 So.2d 1054, 1056 (Ala. 1979)). The limited exceptions to this general prohibition do not apply here, so the court has not assigned any value to the request for mental anguish damages.

In reaching this conclusion, the court rejects Thompson's argument that his pre-suit settlement demand letter fixes the amount in controversy at $75,000. Doc. 5 at 8–9; Docs. 5-1 & 5-2. A "settlement offer . . . counts for something," but what it counts for depends on the circumstances. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994). Most settlement offers are entitled to little weight in assessing the amount in controversy. *Jackson v. Select Portfolio Serv., Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009). On the other hand, settlement offers incorporating "specific information . . . to support [the plaintiff's] claim for damages" are entitled to more weight because they suggest that the plaintiff is "offering a reasonable assessment of the value of [her] claim." *Golden Apple Mgmt. Co. v. GEAC Comps., Inc.*, 990 F. Supp. 1364, 1368 (M.D. Ala. 1998); *see also Hardy v. Jim Walter Homes, Inc.*, 2007 WL 1889896 at *6 n.11 (S.D. Ala. 2007).

The court assigns little weight to Thompson's demand letter in determining the amount in controversy here. While it contains a detailed accounting of Thompson's medical bills, the letter makes no effort to value the other categories of compensatory damages requested in the complaint other than to request the policy limits. Thompson's lawyer also sent the demand before filing suit. He then prepared and filed the complaint, which is broader than an action for simple breach of contract in that it includes a claim for bad faith and a specific request for punitive damages. The court therefore concludes that State Farm has established by a preponderance of

the evidence that the amount in controversy in this lawsuit exceeded $75,000 at the time of removal.

## IV. CONCLUSION

For these reasons, it is ORDERED that Plaintiff's Motion to Remand (Doc. 8) is DENIED.

The general continuance of discovery obligations remains in place. *See* Doc. 7. Because Thompson may have believed that his filing of the motion to remand served as a substitute for responding to the motion to dismiss (Doc. 3), the court will allow him another opportunity to oppose the motion. It is therefore ORDERED that Thompson shall file a response to the motion to dismiss on or before **September 25, 2026.** The court will treat the motion as unopposed if Thompson does not file a response by this deadline. Any reply by State Farm must be filed on or before **October 2, 2026.**

DONE and ORDERED on September 11, 2026.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE